# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

**Appeal No. 20-1268**

**UNITED STATES OF AMERICA,**
Appellee

v.

**FRANCIS M. REYNOLDS, a/k/a Frank Reynolds**
Defendant-Appellant

**SUGGESTION OF DEATH,
MOTION FOR APPOINTMENT OF COUNSEL, AND
MOTION FOR AN ORDER DIRECTING THE PARTIES TO
<u>ADDRESS CERTAIN ABATEMENT ISSUES</u>**

## Introduction

The government has learned that defendant-appellant Francis M. Reynolds died in Bureau of Prisons custody on January 9, 2022, while this appeal was pending. Reynolds represented himself *pro se*, and thus there is no opposing party or counsel of record on whom the government may serve this filing. For the following reasons, the government moves the Court to (a) appoint counsel for the other side, and (b) thereafter, direct the parties to address what procedural consequences should follow from Reynolds's death.[1]

---

[1] The Assistant U.S. Attorney who filed the government's responsive brief has since become the First Assistant U.S. Attorney for the District of Rhode Island. The undersigned, however, filed a notice of appearance prior to the filing of that brief,

## Background

Following a 14-day trial, a jury convicted Reynolds of one count of securities fraud and three counts of obstructing an SEC proceeding, based on a scheme that involved nearly 200 victims and at least $7.5 million in losses. [Docket Nos. 105, 229, 286 at 77-90, and 291]. On February 18, 2020, the district court (Woodlock, J.) sentenced Reynolds to seven years in prison and three years of supervised release [Docket No. 291], after finding that "among economic crimes, this is as serious [an] offense as I've encountered . . . ." [Docket No. 286 at 77-78]. The court ordered him to pay restitution to victims in the amount of $7,551,757 and a special assessment of $400. [Docket No. 291]. The court also issued an order of forfeiture (money judgment) in the amount of $280,000. [Docket No. 292]. Further procedural details may be found in the government's responsive brief. [Gov. Br. 18-20].

Reynolds filed a timely notice of appeal, and elected to represent himself. [Docket No. 300]. On appeal, he challenged his convictions and sentence on six main grounds. [Gov. Br. 1-2]. Briefing is complete and the appeal is pending.

## Abatement Issues

There is no precedential opinion in this circuit addressing the question of what procedural consequences must (or may) follow when a criminal defendant files a

---

and thus it appears that no motion under Local Rule 12.0(a) is required here. If the Court disagrees, the government will file such a motion.

direct appeal challenging his convictions and dies while that appeal is pending. Although published decisions from other circuits have invoked the so-called doctrine of abatement *ab initio* (hereafter, "the abatement rule") in this situation in ordering the vacation of criminal judgments or portions thereof, First Circuit case law is silent on the topic. The Court has applied the abatement rule, but only in unpublished orders as far as the government can tell. Moreover, even courts that adhere to the rule recognize that it has no constitutional or statutory footing. *See, e.g., United States v. Libous*, 858 F.3d 64, 69 (2d Cir. 2017) ("Abatement ab initio is a common law doctrine: If Congress deems it an undesirable one, it can act accordingly."); *United States v. Volpendesto*, 755 F.3d 448, 453 (7th Cir. 2014) ("[T]he abatement rule does not have a constitutional basis."); *United States v. Estate of Parsons*, 367 F.3d 409, 414 (5th Cir. 2004) (en banc) ("Given that the doctrine of abatement ab initio is largely court-created and a creature of the common law, the applications of abatement are more amenable to policy and equitable arguments.")

Given the absence of controlling authority in this circuit, and the lack of any constitutional or statutory mandate, there is a threshold question presented by this appeal: Whether Supreme Court precedent requires this Court to adopt the abatement rule, and if not, whether it should decline to recognize the rule, as many states have done. *See State v. Al Mutory*, 581 S.W.3d 741, 743, 750 (Tenn. 2019) (noting that "twenty-eight states do not apply the doctrine of abatement ab initio," and holding

3

that "the doctrine of abatement ab initio must be abandoned because it is obsolete, its continued application would do more harm than good, and it is inconsistent with the current public policy of this State, as reflected in the constitution, in statutes, and in recent judicial decisions.").[2]

As the government will explain at greater length in any briefing ordered by the Court, Supreme Court precedent does not control the outcome here. In 1971, in a 5-4 opinion, the Court stated that "death pending *direct review of a criminal conviction* abates not only the appeal but also all proceedings had in the prosecution from its inception." *Durham v. United States*, 401 U.S. 481, 483 (1971) (per curiam) (emphasis added); *see also Lee v. United States*, 414 U.S. 807, 807 (1973); *Bradley v. United States*, 404 U.S. 567, 567 (1972) (per curiam). Only five years later, however, the Court, in an 8-1 opinion, eliminated the *Durham* rule, at least in cases

---

[2] The government's position on this threshold issue will be set forth initially in an upcoming filing in *United States v. Sampson*, No. 17-6001. In *Sampson*, the Court has asked the parties to address what consequences should follow in the case of a defendant who died while his appeal was pending but who had only challenged his death sentence, not his convictions. Courts that have adopted the abatement rule have nonetheless concluded that, where an appeal only raises sentencing-related issues, a defendant's convictions remain intact notwithstanding his demise. *See, e.g.*, *United States v. Mladen*, 958 F.3d 156, 160-63 (2d Cir. 2020); *United States v. Brame*, 568 F. App'x 567, 567 (10th Cir. 2014); *United States v. DeMichael*, 461 F.3d 414, 416-17 (3d Cir. 2006); *United States v. Butler*, 48 F. App'x 630, 631 (9th Cir. 2002). If the *Sampson* panel agrees with this position, it may avoid deciding the broader threshold question. Because Reynolds died while challenging his convictions, that question is more squarely presented in his case.

where death occurs while a petition for certiorari is pending, while leaving unclear the full extent of its intended abrogation of *Durham*: "The Court is advised that the petitioner died at New Bern, N. C., on November 14, 1975. The petition for certiorari is therefore dismissed. To the extent that *Durham* . . . may be inconsistent with this ruling, *Durham* is overruled." *Dove v. United States*, 423 U.S. 325, 325 (1976) (per curiam).

Since that time, the Supreme Court has acted in accord with *Dove*, but without clarifying the extent to which *Durham* retains vitality. *See Walker v. United States*, 140 S. Ct. 953, 953 (2020); *Moss v. United States*, 549 U.S. 1303, 1303 (2007); *Mosley v. United States*, 525 U.S. 120, 120 (1998) (per curiam); *United States v. Green*, 507 U.S. 545, 545 (1993) (per curiam); *Kelly v. Matusiak*, 479 U.S. 805, 805 (1986) (per curiam); *Warden, Green Haven State Prison v. Palermo*, 431 U.S. 911, 911 (1977) (per curiam). Indeed, the Supreme Court has not so much as cited *Durham* in the 46 years since *Dove* was decided.

Although other circuits have concluded or assumed that *Durham* survives *Dove* outside the certiorari context, *see, e.g.*, *United States v. Brooks*, 872 F.3d 78, 87 (2d Cir. 2017), the question is open in this circuit, and there are compelling reasons for reaching a different result. *See, e.g. United States v. Volpendesto*, 755 F.3d 448, 454–55 (7th Cir. 2014) (Sykes, J., concurring) ("I question whether the reasons for the abatement rule hold up under close scrutiny. An unreviewed criminal

conviction is neither suspect nor lacking in finality in any relevant sense, and I do not think it unfair to let a criminal judgment stand if the defendant dies while his appeal is pending. * * * In an appropriate case, we should consider whether the abatement doctrine is justified or should be abrogated."); *United States v. Dwyer*, 855 F.2d 144, 145 (3d Cir. 1988) (Sloviter, J., concurring) (observing that after *Dove*, "[t]he present status of *Durham* is in doubt"); *United States v. Pauline*, 625 F.2d 684, 685 (5th Cir. 1980) ("In 42 cryptic, enigmatic words, the Court in *Dove* . . . overruled *Durham*"); *United States v. Rorie*, 58 M.J. 399, 401–06 (C.A.A.F. 2003) (noting that the abatement rule "has not been a policy at the United States Supreme Court since [*Dove* was decided in] 1976," and that it "is not mandated by the Constitution or statute," and abandoning the rule on grounds that "it is not a policy compelled by the interests of justice or the jurisdictional underpinnings of this Court."); *Commonwealth v. Hernandez*, 481 Mass. 582, 587, 118 N.E.3d 107, 113 n.8 (2019) (abandoning abatement rule, and noting that the First Circuit has not addressed in a published opinion the subject of abatement, the extent to which the rule as articulated in *Durham* remains binding, and the proper scope of the rule).

There is a second question: Assuming that the Court must or should adopt the abatement rule as the law of this circuit, what is the proper scope of the rule, and to what extent does it apply to the financial aspects of a judgment of conviction, such as forfeiture and restitution? Once again, the case law reflects a division of authority

6

on such scope issues. *Compare United States v. Coddington*, 802 F. App'x 373, 374-76 & n.3 (10th Cir. 2020) (holding that abatement extends to restitution, discussing the circuit split on this subject, and relying in part on *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), and on a concession by the government), *with United States v. Christopher*, 273 F.3d 294, 297 (3d Cir. 2001) (holding prior to *Nelson* that criminal forfeitures and fines are covered by the abatement rule but that restitution is not).

## **Conclusion**

The government submits that the issues here are important, and that they deserve careful consideration. This is especially so given the weighty interests of the scores of victims Reynolds defrauded and the sheer magnitude of their losses and the restitution they are owed. Thus, the government respectfully moves the Court to (a) appoint counsel for the other side, and (b) thereafter, direct the parties to address what procedural consequences should follow from Reynolds's death.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:  /s/ *Donald C. Lockhart*
DONALD C. LOCKHART
Assistant U.S. Attorney