No. 20-1268

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,
APPELLEE

v.

FRANCIS M. REYNOLDS, a/k/a FRANK REYNOLDS,
DEFENDANT-APPELLANT

ON APPEAL FROM A JUDGMENT IN A CRIMINAL CASE,
ENTERED IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Supplemental Brief for the United States

RACHAEL S. ROLLINS
UNITED STATES ATTORNEY

MARK T. QUINLIVAN
ASSISTANT U.S. ATTORNEY
JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY
SUITE 9200
BOSTON, MASSACHUSETTS 02210
(617) 748-3606

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................1

BACKGROUND ...........................................................................................2

ARGUMENT ................................................................................................4

I.  THE ABATEMENT DOCTRINE IS NOT REQUIRED BY SUPREME COURT PRECEDENT ...............................................................4

II.  THIS COURT SHOULD DECLINE TO ADOPT THE ABATEMENT DOCTRINE ...........................................................................13

III.  IF THIS COURT ADOPTS THE ABATEMENT DOCTRINE IN THIS CASE, REYNOLDS'S CONVICTION AND ANY ASSOCIATED FINANCIAL PENALTIES MUST BE VACATED ...........31

CONCLUSION ...........................................................................................34

CERTIFICATE OF COMPLIANCE.........................................................35

CERTIFICATE OF SERVICE ..................................................................36

i

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Bevel v. Commonwealth*,
   717 S.E.2d 789 (Va. 2011)......................................................................4

*Bradley v. United States*,
   404 U.S. 567 (1972).............................................................................6

*Cawthorn v. Amalfi*,
   35 F.4th 245 (4th Cir. 2022) ...............................................................20

*Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs.*
*Long Term Disability Plan*,
   705 F.3d 58 (1st Cir. 2013)..................................................................29

*Colorado v. Quintero*,
   464 U.S. 1014 (1983)............................................................................7

*Commonwealth v. Hernandez*,
   481 Mass. 582, 118 N.E.3d 107 (2019) ....................................... *passim*

*Crooker v. United States*,
   325 F.2d 318 (8th Cir. 1963) ................................................................5

*Custis v. United States*,
   511 U.S. 485 (1994).............................................................................20

*Delo v. Lashley*,
   507 U.S. 272 (1993).............................................................................15

*Dove v. United States*,
   423 U.S. 325 (1976)...................................................... 4-5, 7, 8, 11, 12

*Durham v. United States*,
   401 U.S. 481 (1971), *overruled to the extent it is inconsistent with*
   *Dove v. United States*, 423 U.S. 325 (1976) .............................. *passim*

*Epps v. United States*,
   401 U.S. 1006 (1971)............................................................................6

*Florida v. Cross*,
    479 U.S. 805 (1986)................................................................7

*Griffin v. Illinois*,
    351 U.S. 12 (1956)..............................................................14

*Hamdi v. Rumseld*,
    527 U.S. 507 (2004)...........................................................18

*Herrera v. Collins*,
    506 U.S. 390 (1993) ............................................... 15, 30, 33

*In re Bank of New England Corp.*,
    364 F.3d 355 (1st Cir. 2004)...............................................29

*Jones v. United States*,
    463 U.S. 354 (1983)...........................................................18

*Kelly v. Matusiak*,
    479 U.S. 805 (1986)..............................................................7

*Lee v. United States*,
    414 U.S. 807 (1973)..............................................................6

*Majors v. State*,
    465 P.3d 223 (Okla. Crim. App. 2020)...............................22

*Michigan v. Ambers*,
    498 U.S. 1077 (1991)............................................................7

*Mintzes v. Buchanan*,
    471 U.S. 154 (1985)..............................................................8

*Morris v. Slappy*,
    461 U.S. 1 (1983)................................................................23

*Mosley v. United States*,
    525 U.S. 120 (1998)..............................................................8

*Moss v. United States*,
    549 U.S. 1303 (2007)............................................................7

*Muniz v. Sabol*,
    517 F.3d 29 (1st Cir. 2008).......................................................................29

*Nelson v. Colorado*,
    581 U.S. 128 (2017)......................................................... 31, 32, 33

*Payton v. State*,
    266 So.3d 630 (Miss. 2019)....................................................................25

*People v. Peters*,
    449 Mich. 515, 537 N.W.2d 160 (1995)..............................................17

*Pipefitters Local Union No. 562 v. United States*,
    407 U.S. 385 (1972).................................................................................7

*Podborny v. Ohio*,
    498 U.S. 1117 (1998)...............................................................................7

*Riley v. California*,
    573 U.S. 373 (2014)...............................................................................29

*Ross v. Moffitt*,
    417 U.S. 600 (1974)...............................................................................15

*Rossiter v. Potter*,
    357 F.3d 25 (1st Cir. 2004).....................................................................29

*Sanchez v. United States*,
    134 F.2d 274 (1st Cir. 1943)...................................................................17

*State v. Al Mutory*,
    581 S.W.3d 741 (Tenn. 2019).......................................... 13, 25, 28, 30

*State v. Carlin*,
    249 P.3d 752 (Alaska 2011)...................................................................22

*State v. Clements*,
    668 So.2d 980 (Fla. 1996).......................................................................17

*State v. Devin*,
    142 P.3d 599 (Wash. 2006).....................................................................16

*State v. Gleason*,
   349 So.3d 972 (La. 2022) ), *reh'g denied*,
   2023 WL 2001337 (La. Feb. 15, 2023) .................................................. 13, 22, 25

*State v. Korsen*,
   141 Idaho 445, 111 P.3d 130 (2005) ....................................................25

*Surland v. State*,
   392 Md. 17, 895 A.2d 1035 (2006) ......................................................16

*Tapia v. United States*,
   564 U.S. 319 (2011)........................................................................23

*United States v. Abuhamra*,
   389 F.3d 309 (2d Cir. 2004)..............................................................18

*United States v. Ajrawat*,
   738 F. App'x 136 (4th Cir. 2018) .................................................. 32-33

*United States v. Austin*,
   276 F. App'x  (10th Cir. 2008) ..........................................................20

*United States v. Barbosa*,
   898 F.3d 60 (1st Cir. 2018)...............................................................11

*United States v. Bayko*,
   774 F.2d 516 (1st Cir. 1985).............................................................19

*United States v. Bechtel*,
   547 F.2d 1379 (9th Cir. 1979) .............................................. 28, 29, 30

*United States v. Brewer*,
   191 F.3d 448 (4th Cir. 1999) (Mem.) ................................................20

*United States v. Brooks*,
   872 F.3d 78 (2d Cir. 2017)................................................. 9, 10, 14, 33

*United States v. Christopher*,
   273 F.3d 294 (3d Cir. 2001)........................................................ 28, 29

*United States v. Coddington*,
   802 F. App'x 373 (10th Cir. 2020) ............................................... 32, 34

*United States v. Davis*,
    953 F.2d 1482 (10th Cir. 1992) .............................................................. 28, 29, 34

*United States v. DeMichael*,
    461 F.3d 414 (3d Cir. 2006) ............................................................................ 9-10

*United States v. Dudley*,
    739 F.2d 175 (4th Cir. 1984) ................................................................. 28, 29, 30

*United States v. Edwards*,
    415 U.S. 800 (1974) ............................................................................................... 7

*United States v. Estate of Parsons*,
    367 F.3d 409 (5th Cir. 2004) ...................................................................... *passim*

*United States v. Fairfield*,
    526 F.2d 8 (8th Cir. 1975) ...................................................................... 28, 29, 30

*United States v. Garduno-Trejo*,
    395 F. App'x 321 (8th Cir. 2010) ........................................................................ 20

*United States v. Green*,
    507 U.S. 545 (1993) ............................................................................................... 8

*United States v. Gutierrez-Alvarez*,
    No. 19-1259 (1st Cir. July 19, 2021) .................................................................. 13

*United States v. Howard*,
    991 F.2d 195 (5th Cir. 1993) ............................................................................... 20

*United States v. Libous*,
    858 F.3d 64 (2d Cir. 2017) ................................................................. 4, 14, 31, 33

*United States v. Meyer*,
    808 F.2d 912 (1st Cir. 1987) ............................................................................... 29

*United States v. Moehlenkamp*,
    557 F.2d 126 (7th Cir. 1977) ......................................................... 12, 14, 28, 30

*United States v. Mollica*,
    849 F.2d 723 (2d Cir.1988) ................................................................... 28, 29, 30

*United States v. Munsingwear, Inc.*,
   340 U.S. 36 (1950) ...............................................................................10

*United States v. Nascimento*,
   491 F.3d 25 (1st Cir. 2007) ..................................................................29

*United States v. Onuoha*,
   820 F.3d 1049 (9th Cir. 2016) ..............................................................23

*United States v. Pauline*,
   625 F.2d 684 (11th Cir. 1980) ................................................. 28, 29, 30

*United States v. Pogue*,
   19 F.3d 663 (D.C. Cir. 1994) .................................................. 28, 29, 31

*United States v. Reda*,
   787 F.3d 625 (1st Cir. 2015) .................................................................10

*United States v. Rorie*,
   58 M.J. 399 (C.A.A.F. 2003) ...................................................................8

*United States v. Sampson*,
   26 F.4th 514 (1st Cir. 2022) ......................................................... *passim*

*United States v. Sampson*,
   2017 WL 3495703 (D. Mass. Aug. 15, 2017) ......................................26

*United States v. Sampson*,
   58 F. Supp. 3d 233 (D. Mass. 2014) ................................................... 26

*United States v. Sampson*,
   58 F. Supp. 3d 136 (D. Mass. 2012) ....................................................26

*United States v. Sampson*,
   300 F. Supp. 2d 275 (D. Mass. 2004) ..................................................26

*United States v. Sanchez-Alvarado*,
   No. 18-1972 (1st Cir. June 2, 2020) .....................................................13

*United States v. Texas*,
   507 U.S. 529 (1993) ..............................................................................33

vii

*United States v. Toney*,
  527 F.2d 716 (6th Cir.1975) ................................................. 28, 29, 30

*United States v. Troy*,
  618 F.3d 27 (1st Cir. 2010) ...................................................11

*United States v. Vega-Salgado*,
  769 F.3d 100 (1st Cir. 2014) .................................................11

*United States v. Volpendesto*,
  755 F.3d 448 (7th Cir. 2014) ..............................................4, 16

*United States v. Williams*,
  490 F. App'x 296 (11th Cir. 2012) .........................................20

*United States v. Wurie*,
  723 F.3d 1 (1st Cir. 2013),
  *reh'g en banc denied*, 724 F.3d 250 (1st. Cir. 2013),
  *aff'd by Riley v. California*, 573 U.S. 373 (2014) ................................29

*United States v. Zannino*,
  761 F.2d 52 (1st Cir. 1985) ................................................. 28, 29

*United States v. Ziglar*,
  — F. App'x —, 2021 WL 5072078 (4th Cir. Nov. 2, 2021)................................32

*Walker v. United States*,
  140 S. Ct. 953 (2020) ...........................................................7

*Warden, Green Haven State Prison v. Palermo*,
  431 U.S. 911 (1977)..............................................................7

*Waters v. Day & Zimmerman NPS, Inc.*,
  23 F.4th 84 (1st Cir.), *cert. denied*, 142 S. Ct. 2777 (2022)................................29

*Wheat v. State*,
  907 So.2d 461 (Ala. 2005) .....................................................22

## STATUTES

18 U.S.C. §3143(b)(1)...........................................................18

18 U.S.C. §3553(a)(2)(B) .......................................................23

18 U.S.C. §3553(a)(2)(C) ...................................................................23

18 U.S.C. §3613(b) ........................................................... 2, 24, 33, 34

18 U.S.C. §3663A(a)(1) ...................................................................24

18 U.S.C. §3771(a)(7) ......................................................................24

18 U.S.C. §3771(a)(8) ......................................................................24

Justice for All Reauthorization Act of 2016,
    Pub. L. No. 114-324, 130 Stat. 1948 .................................................24

Crime Victims' Rights Act of 2004
    Pub. L. No. 108-405, 118 Stat. 2261 .................................... 24, 29, 33

Mandatory Victims Restitution Act of 1996,
    Pub. L. No. 104-132, 110 Stat. 1238 ...............................23-24, 29, 33

Sentencing Reform Act of 1984,
    Pub. L. No. 98-473,98 Stat. 1987 ....................................................23

## SENTENCING GUIDELINES

USSG §4A1.1 .................................................................................19

USSG §4A1.1(a)-(e) ........................................................................19

USSG §4A1.2(1) ..............................................................................19

USSG §4A1.2 cmt. n.6 ....................................................................20

## OTHER AUTHORITIES

162 Cong. Rec. H6326 (daily ed. Nov. 29, 2016) ..................................24

Government's Response to Court Order and Suggestion of Death
    of Defendant Gary Lee Sampson,
    *United States v. Gary Lee Sampson*, No. 17-6001 (1st. Cir. Jan. 21, 2022) .......11

Reply to Government's Response to Court Order and Suggestion of Death
    of Defendant Gary Lee Sampson,
    *United States v. Gary Lee Sampson*, No. 17-6001 (1st. Cir. Jan. 28, 2022) .......11

Letter submitted by Interested Party Mary Rizzo,
   *United States v. Gary Lee Sampson*, No. 17-6001 (1st. Cir. Jan. 14, 2022) .......27

John Ellement, *Salvi's Record Wiped Clean, Posthumously Charges
Voided on Technicality*, THE BOSTON GLOBE, February 1, 1997 ...........................27

## INTRODUCTION AND SUMMARY OF ARGUMENT

This Court should decline to adopt the doctrine of abatement *ab initio* (hereafter the "abatement doctrine"). That common law doctrine is not required by the Constitution of the United States or federal statute, nor, as the *amicus curiae* agrees, does Supreme Court precedent require its adoption. This Court also has not embraced that doctrine in a published opinion. Writing on a clean slate, this Court should decline to adopt it because the rationales underpinning it – the finality and punishment principles – do not stand up to careful scrutiny: the presumption of innocence disappears once a defendant is convicted; a conviction and resulting sentence serve more purposes than mere incapacitation; the abatement doctrine is inconsistent with statutes enacted by Congress designed to protect the victims of crime and hold offenders accountable for the losses they inflict; and that doctrine affirmatively harms the victims of crime and their loved ones. This Court should simply dismiss this appeal as moot, as it did in *United States v. Sampson*, 26 F.4th 514, 515-16 (1st Cir. 2022) (per curiam), when the defendant in that case died while his direct appeal challenging his death sentence was pending.

If, however, this Court were to adopt the abatement doctrine, this appeal should be dismissed, and the case remanded with instructions that Reynolds's convictions be vacated and the indictment dismissed. The government also agrees that if Reynolds's convictions are vacated, the financial penalties imposed in this

case must also be vacated.  But this conclusion only underscores why the abatement doctrine should not be adopted.  Congress has spoken directly to the subject of what should happen when a defendant subject to a restitution order dies; it has provided – without exception – that "the individual's estate will be held responsible for any unpaid balance of the restitution amount."  18 U.S.C. §3613(b).  Abating a restitution order when a defendant dies while his or her direct appeal is pending would flout this clear Congressional directive.  For these reasons and others, the majority of states have declined to adopt or abandoned the abatement doctrine upon concluding that it is outdated and obsolete.  This Court should do the same.

## BACKGROUND

On October 28, 2019, following a 14-day trial, a jury convicted the defendant, Francis M. Reynolds, of one count of securities fraud and aiding and abetting, and three counts of obstruction of an agency proceeding.  [D.229].[1]  On February 18, 2020, the district court (Woodlock, J.) sentenced Reynolds to seven years' imprisonment and three years of supervised release, and ordered him to pay a special assessment of $400, restitution to the victims in the amount of $7,551,757, and forfeiture in the amount of $280,000.  [D.291].  In imposing that sentence, the district

---

[1] Citations are as follows:  Docket entries are cited as "[D._]."  The *amicus curiae* Brief is cited as "(*Amicus* Brief at __)."

court said that in terms of the seriousness of the offense, "[t]here is no question that, among economic crimes, this is as serious [an] offense as I've encountered, one would encounter."  [D.286, at 77-78].

Reynolds filed a timely notice of appeal and raised a number of challenges to his convictions in his *pro se* opening brief.  After briefing was completed and the case was submitted to a panel, Reynolds died in federal custody on January 9, 2022. On January 18, 2022, after learning of Reynolds's death, the government filed a Suggestion of Death, and it subsequently reported to the Court that Reynolds's personal representative did not intend to appear in this case.

On September 6, 2022, this Court appointed the Federal Public Defender as *amicus curiae* to assist it, and directed the *amicus* and the government to file briefs addressing the following issues, along with any pertinent related issues: (1) whether Supreme Court precedent requires this Court to adopt the abatement doctrine; (2) if not, whether the Court should formally adopt some form of the abatement doctrine; and (3) if so, the scope of its application in this case, *i.e.*, whether the doctrine should apply to either or both of (a) the convictions being challenged by defendant at the time of his death, and/or (b) the financial aspects of the judgment of conviction, such as forfeiture and restitution.

## **ARGUMENT**

## I.    THE ABATEMENT DOCTRINE IS NOT REQUIRED BY SUPREME COURT PRECEDENT.

The first question this Court directed the *amicus* and the government to address is whether Supreme Court precedent requires adoption of the abatement doctrine.  As the *amicus* agrees, the answer is no.

**1.**    Under the abatement doctrine, "a criminal conviction is vacated and the indictment is dismissed after the defendant dies while his direct appeal as of right challenging that conviction is in process." *Commonwealth v. Hernandez*, 481 Mass. 582, 583, 118 N.E.3d 107, 109 (2019).  The origin of this doctrine "is unclear, with little or no evidence of its application prior to the late nineteenth century." *Bevel v. Commonwealth*, 717 S.E.2d 789, 792 (Va. 2011).  What is clear is that abatement is a common law doctrine that is neither required by the Constitution nor federal statute.  *See, e.g., United States v. Libous*, 858 F.3d 64, 69 (2d Cir. 2017) ("Abatement ab initio is a common law doctrine: If Congress deems it an undesirable one, it can act accordingly."); *United States v. Volpendesto*, 755 F.3d 448, 453 (7th Cir. 2014) (noting that "the abatement rule does not have a constitutional basis").

Supreme Court precedent also does not require adoption of the abatement doctrine.  In *Durham v. United States*, 401 U.S. 481, 483 (1971) (per curiam), *overruled to the extent it is inconsistent with Dove v. United States*, 423 U.S. 325

- 4 -

(1976), the defendant, whose conviction had been affirmed on direct appeal, died while his petition for a writ of certiorari was pending. In a 5-4 vote, the Court said that "[o]ur cases where a petitioner dies while a review is pending are not free of ambiguity," and that, beyond suggesting "such disposition on remand 'as law and justice require,'" it had "basically allowed the scope of the abatement to be determined by the lower federal courts." *Id.* at 482. Noting that the Eighth Circuit had recently concluded that the lower courts "were unanimous that death pending direct review of a criminal conviction abates not only the appeal but also all proceedings in the prosecution from its inception," the Court stated that the unanimity of the lower courts on this issue was "impressive" and "[w]e believe they have adopted the correct rule." *Id.* at 482-83 (citing *Crooker v. United States*, 325 F.2d 318, 320 (8th Cir. 1963)). The Court therefore granted certiorari, vacated the judgment below, and remanded the case to the district court "with directions to dismiss the indictment." *Id.* at 483.

In reaching this conclusion, the Court rejected any distinction between how the abatement doctrine should be applied to cases on direct appeal as opposed to cases in which certiorari had been sought:

> It is suggested that *Crooker* is different because it involved a right of appeal, while here we deal with a petition for a writ of certiorari. It is, of course, true that appeals are a matter of right while decisions on certiorari petitions are wholly discretionary. Congress, however, has given a right to petition for certiorari and petitioner exercised that right.

No decision had been made on that petition prior to his death. Since death will prevent any review on the merits, whether the situation is an appeal or certiorari, the distinction between the two would not seem to be important for present purposes.

*Id.* at 483 n.*.

Four Justices dissented. Justice Marshall, joined by Chief Justice Burger and Justice Stewart, said the Court should have simply dismissed the petition for certiorari and directed the Court of Appeals to note that action on its records. *Id.* at 483 (Marshall, J., with whom the Chief Justice and Stewart, J., join). Justice Blackmun said the Court should have "merely dismiss[ed] the decedent's petition for certiorari, rather than direct the dismissal of the indictment." *Id.* at 483-84 (Blackmun, J., dissenting).

Over the next four-plus years, the Supreme Court followed *Durham* in cases in which a defendant died while his or her petition for certiorari was pending by granting certiorari, vacating the judgment below, and remanding to the district court with instructions to dismiss the indictment.[2] The Court also followed *Durham* in cases in which one or more defendants died after a petition for certiorari had been

---

[2] *See Lee v. United States*, 414 U.S. 807, 807 (1973); *Bradley v. United States*, 404 U.S. 567, 567 (1972) (per curiam); *Epps v. United States*, 401 U.S. 1006, 1006 (1971).

granted, ordering that the judgments of conviction as to those defendants be vacated with directions to the district court to dismiss the indictment against them.[3]

The Supreme Court changed course in *Dove*. That case presented the very same factual posture as in *Durham* – after the defendant's conviction was affirmed on direct appeal, he died while his petition for a writ of certiorari was pending. In an 8-1 decision, the Court simply ordered that the petition for certiorari be dismissed and stated that "[t]o the extent that [*Durham*] may be inconsistent with this ruling, *Durham* is overruled." 423 U.S. at 325. Only Justice White dissented, without opinion. *Id.* at 325 (White, J., dissenting).

Following its decision in *Dove*, the Supreme Court has dismissed petitions for certiorari upon being apprised of a defendant's death without vacating the judgment below or directing that the indictment be dismissed.[4] Similarly, in cases in which it was apprised of a defendant's death after certiorari had already been granted, the Court has vacated the grant and dismissed the petition for certiorari, again without

---

[3] *See United States v. Edwards*, 415 U.S. 800, 801 n.1 (1974); *Pipefitters Local Union No. 562 v. United States*, 407 U.S. 385, 400 n.11 (1972).

[4] *See Walker v. United States*, 140 S. Ct. 953 (2020); *Moss v. United States*, 549 U.S. 1303 (2007); *Podborny v. Ohio*, 498 U.S. 1117 (1998); *Michigan v. Ambers*, 498 U.S. 1077 (1991); *Kelly v. Matusiak*, 479 U.S. 805 (1986) (per curiam); *Florida v. Cross*, 479 U.S. 805 (1986); *Colorado v. Quintero*, 464 U.S. 1014 (1983); *Warden, Green Haven State Prison v. Palermo*, 431 U.S. 911 (1977).

vacating the judgment below or directing that the indictment be dismissed.[5]  Since *Dove* was decided nearly a half-century ago, the Supreme Court has not cited *Durham* again in a majority opinion or otherwise applied the abatement doctrine. Thus, as the U.S. Court of Appeals for the Armed Forces has observed, "abatement ab initio has not been a policy at the United States Supreme Court since 1976." *United States v. Rorie*, 58 M.J. 399, 401 (C.A.A.F. 2003).

      **2.**   *Durham* does not require application of the abatement doctrine.  The only issue before the Supreme Court in *Durham* was the very issue on which *Durham* was reversed in *Dove* – the effect of a defendant's death while a petition for certiorari was pending.  *Durham* did not purport to adopt a binding "rule" on how to treat defendants in other situations, as the Court stated that it had "basically allowed the scope of the abatement to be determined by the lower federal courts."  401 U.S. at 482.  In addition, any dicta in *Durham* regarding other situations lost its logical and legal foundation when the Court essentially adopted the positions taken by the dissenting Justices in *Durham* by dismissing the petition for certiorari and leaving the defendant's conviction intact.  The *amicus* thus agrees (*Amicus* Brief at 2-5) that Supreme Court precedent "do[es] not require adoption of a rule that death pending

---

[5] *See Mosley v. United States*, 525 U.S. 120 (1998) (per curiam); *United States v. Green*, 507 U.S. 545 (1993) (per curiam); *Mintzes v. Buchanan*, 471 U.S. 154, 154 (1985) (per curiam).

direct review of a criminal conviction abates all proceedings from the inception of the prosecution."

**3.** Any suggestion that Supreme Court precedent requires adoption of the abatement doctrine also is inconsistent with this Court's decision in *Sampson*. In that case, after the defendant, Gary Lee Sampson, pled guilty to two counts of carjacking resulting in death, he was sentenced to death on one count and to life imprisonment without the possibility of release on the other, and, on direct appeal challenged only his death sentence. 26 F.4th at 515 & n.1. Following Sampson's death in federal custody, this Court requested briefing on "the effect of [Sampson's] death on this appeal and on the underlying convictions." *Id.* at 515. The government and Sampson's attorneys agreed that Sampson's convictions and life sentence should not be vacated because they had not been challenged in his appeal, but they disagreed as to whether his death sentence should be vacated. *Id.* at 515-16. Specifically, Sampson's attorneys "argue[d], in reliance on the doctrine of abatement ab initio, that the death sentence should be vacated." *Id.* at 516 (internal quotation omitted).

This Court declined to adopt the abatement doctrine or vacate Sampson's convictions or sentences. This Court first "agree[d] with both parties that the convictions and life sentence cannot, as a matter of law, be vacated." *Id.* at 516 (citing *United States v. Brooks*, 872 F.3d 78, 87-88 (2d Cir. 2017), and *United States*

- 9 -

*v. DeMichael*, 461 F.3d 414, 415-17 (3d Cir. 2006)).[6]  Turning to Sampson's death

sentence, this Court "agree[d] with the government that the appeal is moot because

we cannot give any effectual relief to the potentially prevailing party," and further

stated that because Sampson's attorneys "make no argument under [*United States v.*

*Munsingwear, Inc.*, 340 U.S. 36, 40-41 (1950)], as to why we must vacate the

sentence in light of the appeal being moot, we decline to do so."  *Ibid.* (internal

quotation omitted).  This Court therefore ordered that "Sampson's convictions, life

sentence, and death sentence are not vacated and remain intact."  *Ibid.*

Because this Court neither adopted the abatement doctrine nor vacated

Sampson's convictions or sentences, *Sampson* implicitly forecloses any suggestion

that Supreme Court precedent requires adoption of that doctrine.  *See, e.g., United*

*States v. Reda*, 787 F.3d 625, 632 n.6 (1st Cir. 2015) (holding that government's

argument regarding interpretation of guideline commentary was "foreclosed, albeit

implicitly," by prior decision in which this Court had applied guideline at issue in a

way contrary to the government's argument).  This Court, of course, was aware of

---

[6] In *Brooks*, the Second Circuit held that the abatement rule was "not
indivisible," and abated only the counts of conviction that were the subject of his
direct appeal and the associated forfeiture order, fine, and special assessment, but
did not abate his convictions on those counts to which he pled guilty and did not
appeal.  872 F.3d at 87-88.  Similarly, in *DeMichael*, the Third Circuit held that
because the defendant only challenged his fine in his direct appeal, his conviction
would not be abated.  461 F.3d at 415-17.

the Supreme Court's decisions in *Durham* and *Dove* before reaching that decision.[7] And because *Durham* predated *Sampson* by more than a half-century, that decision does not constitute authority that would implicate either exception to the law of the circuit doctrine. *See United States v. Barbosa*, 898 F.3d 60, 75 (1st Cir. 2018) (holding that Supreme Court decisions predating circuit precedent being challenged "cannot lay the groundwork for either of the exceptions to the law of the circuit doctrine"); *United States v. Troy*, 618 F.3d 27, 36 (1st Cir. 2010) (holding that Supreme Court decisions predating circuit precedent being challenged is "impuissant against the law of the circuit rule").

4.    The government acknowledges that some federal courts of appeals have either expressly or implicitly concluded that *Dove* overruled *Durham* only with respect to the disposition of petitions for certiorari. The Seventh Circuit, for example, has said that it did not read "the Court's cryptic statement in *Dove*" to alter the "longstanding and unanimous view of the lower federal courts that the death of

---

[7] *See United States v. Vega-Salgado*, 769 F.3d 100, 104 (1st Cir. 2014) ("We presume that federal judges know the law, and a reviewing court should not lightly assume that a lower court is either ignorant of or has forgotten an abecedarian principle."). *Durham* and *Dove* also were discussed in the briefs submitted by the government and Sampson's attorneys to this Court regarding the effect of Sampson's death on his pending direct appeal. *See* Government's Response to Court Order and Suggestion of Death of Defendant Gary Lee Sampson, *United States v. Gary Lee Sampson*, No. 17-6001, at 7-12 (1st Cir. Jan. 21, 2022); Reply to Government's Response to Court Order and Suggestion of Death of Defendant Gary Lee Sampson, *United States v. Gary Lee Sampson*, No. 17-6001, at 3-4 (1st Cir. Jan. 28, 2022).

- 11 -

an appellant during the pendency of his appeal of right from a criminal conviction abates the entire course of the proceedings brought against him," nor did that court "read *Dove* as preventing us from giving effect to the abatement of the case before us by vacating the judgment of conviction and remanding the case for dismissal of the indictment, as did the Court in *Durham*."  *United States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir. 1977).

This analysis relies on a distinction between petitions for certiorari and direct appeals that the Supreme Court itself rejected in *Durham*.  *See* 481 U.S. at 483 n.*, It also is inconsistent with *Sampson*, which involved a direct appeal from Sampson's death sentence.  *See* 26 F.4th at 515-16.  In any event, *Moehlenkamp* and similar decisions merely stand for the proposition that *Dove* does not *foreclose* application of the abatement doctrine by the lower federal courts in criminal cases on direct appeal.  That is altogether different from any suggestion that *Durham* necessarily *requires* it.

\*     \*     \*

Supreme Court precedent does not require adoption of the abatement doctrine. This Court therefore is free to decide whether to adopt that doctrine in the first instance.

## II.   THIS COURT SHOULD DECLINE TO ADOPT THE ABATEMENT DOCTRINE.

This Court next directed the *amicus* and the government to address whether, if the abatement doctrine is not required by Supreme Court precedent, this Court should formally adopt it.  The answer to this question also is no.  This Court has never examined in a published opinion whether the arguments for and against the abatement doctrine support its adoption in this circuit.  While this Court has applied the abatement doctrine in prior cases, it has done so only in unpublished judgments,[8] and this Court did not adopt that doctrine in *Sampson* or vacate Sampson's convictions or sentences.  And although every other regional federal court of appeals has adopted the abatement doctrine in one form or another, at least 30 states do not apply the abatement doctrine.[9]

As a matter of first impression, this Court should decline to adopt the abatement doctrine because the rationales underpinning it do not withstand scrutiny.

---

[8] *See, e.g.,* Judgment, *United States v. Jose Gutierrez-Alvarez, a/k/a Pepinillo*, No. 19-1259 (1st Cir. July 19, 2021); Judgment, *United States v. Luis A. Sanchez-Alvarado*, No. 18-1972 (1st Cir. June 2, 2020).

[9] *See State v. Al Mutory*, 581 S.W.3d 741, 748 & n.7 (Tenn. 2019) (stating that "the tide has turned" and "currently, twenty-eight states do not apply the doctrine of abatement ab initio.").  The Supreme Court of Tennessee abandoned the abatement doctrine in *Al Mutory*, 581 S.W.3d at 749-50, and the Supreme Court of Louisiana abandoned it in *State v. Gleason*, 349 So.3d 972, 982-83 (La. 2022), *reh'g denied*, 2023 WL 2001337 (La. Feb. 15, 2023), bringing the total to at least 30 states.

1.      As the en banc Fifth Circuit has recognized, two "primary approaches" underpin the abatement doctrine: the "finality principle" and the "punishment principle." *United States v. Estate of Parsons*, 367 F.3d 409, 414 (5th Cir. 2004) (en banc); *accord Brooks*, 872 F.3d at 87 (stating that courts "have often considered abatement to be justified by the finality and just punishment principles"). The "finality principle" provides that "the interests of justice ordinarily require that a defendant not stand convicted without resolution of the merits of an appeal." *Libous*, 858 F.3d at 66 (internal quotation omitted). The "punishment principle," by contrast, "focuses on the precept that the criminal justice system exists primarily to punish and cannot effectively punish one who has died." *Estate of Parsons*, 369 F.3d at 414. Neither principle withstands careful scrutiny.

a.      In *Moehlenkamp*, the Seventh Circuit identified the finality principle as the reason for adoption of the abatement doctrine, stating that "the interests of justice ordinarily require that [a defendant] not stand convicted without resolution of the merits of his appeal, which is an 'integral part of our system for finally adjudicating his guilt or innocence.'" 557 F.2d at 128 (quoting *Griffin v. Illinois*, 351 U.S. 12, 18 (1956)). Other courts of appeals agree. *See, e.g., Brooks*, 872 F.3d at 88 ("In weighing the two principles, we conclude that finality is the paramount consideration."); *Estate of Parsons*, 369 F.3d at 415 ("The finality principle provides a better explanation why all prior proceedings disappear. A

- 14 -

defendant's death during appeal forces a court to decide between disregarding a finding of guilt and entering an unreviewed judgment.  Presumptions of innocence and a desire to ensure guilt naturally point to extinguishing all criminal proceedings.").

The finality principle cannot be squared with Supreme Court precedent.  The Court has stated that the presumption of innocence "operates at the guilt phase of a trial to remind the jury that the State has the burden of establishing every element of the offense beyond a reasonable doubt," *Delo v. Lashley*, 507 U.S. 272, 278 (1993), inasmuch as "[t]he purpose of the trial stage from the State's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt." *Ross v. Moffitt*, 417 U.S. 600, 610 (1974).  But "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged," the Court has made clear, "*the presumption of innocence disappears*." *Herrera v. Collins*, 506 U.S. 390, 399 (1993) (emphasis added).  Thus, in *Herrera*, the Court said that because the petitioner in that case had been found guilty of the capital murder of a police officer beyond a reasonable doubt, "in the eyes of the law, petitioner does not come before the Court as one who is 'innocent,' but, on the contrary, as one who has been convicted by due process of law of two brutal murders." *Id.* at 399-400.

- 15 -

As now-Chief Judge Sykes pointed out in urging the Seventh Circuit to reconsider its adoption of the abatement doctrine, the finality principle is at odds with this settled understanding:

> As my colleagues explain, the doctrine of abatement holds that when a criminal defendant dies during the pendency of his direct appeal, the entire criminal proceeding is extinguished *ab initio*, so that in the eyes of the law, it is as if he had never been indicted or convicted. This judge-made rule is usually explained in terms of fairness or lack of finality or both.  I question whether the reasons for the abatement rule hold up under close scrutiny.  An unreviewed criminal conviction is neither suspect nor lacking in finality in any relevant sense, and I do not think it unfair to let a criminal judgment stand if the defendant dies while his appeal is pending.
>
> * * * In an appropriate case, we should consider whether the abatement doctrine is justified or should be abrogated. Because that question has not been briefed here, I agree with my colleagues that the district court's judgment must be vacated and the case dismissed.

*Volpendesto*, 755 F.3d at 454-55 (Sykes, J., concurring) (internal citations omitted). Many state courts have reached the same conclusion.  *See, e.g., State v. Devin*, 142 P.3d 599, 605 (Wash. 2006) (holding that prior decision adopting abatement doctrine was "incorrect in light of later decisions cutting off the presumption of innocence after conviction and in view of modern compensatory statutes"); *Surland v. State*, 392 Md. 17, 35, 895 A.2d 1035, 1045 (2006) ("The presumption that the judgment of conviction is valid should permit it to remain in effect unless, at the *defendant's* election, exercised by a substituted party appointed by the defendant's estate for the defendant's benefit, the appeal continues and results in a reversal, vacation, or

- 16 -

modification of the judgment.") (emphasis in original); *State v. Clements*, 668 So.2d 980, 981-82 (Fla. 1996) ("This Court has stated that the presumption of innocence ceases upon the adjudication of guilt and the entry of sentence. Furthermore, we have held that a judgment of conviction comes for review with a presumption in favor of its regularity or correctness. We therefore conclude, contrary to [prior appellate decision], that the death of the defendant does not extinguish a presumably correct conviction and restore the presumption of innocence which the conviction overcame.") (internal quotation and citations omitted); *People v. Peters*, 449 Mich. 515, 521, 537 N.W.2d 160 (1995) ("Where a defendant dies pending an appeal of a criminal conviction, we hold that the appeal should be dismissed, but the conviction retained. The conviction of a criminal defendant destroys the presumption of innocence regardless of the existence of an appeal of right. We therefore find that it is inappropriate to abate a criminal conviction.").

The settled understanding that the presumption of innocence disappears following a conviction is reflected in several other features of federal law. As this Court long ago held, "[t]here is no constitutional right to bail pending appeal." *Sanchez v. United States*, 134 F.2d 274, 279 (1st Cir. 1943). Rather, the Second Circuit has explained, once a defendant has been convicted of a crime, the entitlement to bail pending appeal is solely a creation of statute:

- 17 -

The "private interest" affected by the challenged government action in this case is "the most elemental of liberty interests—the interest in being free from physical detention by one's own government." Nevertheless, once a jury found Abuhamra guilty beyond a reasonable doubt of multiple felonies, his reasonable expectation of continued freedom from government detention was significantly reduced from that of the average law-abiding citizen, or that of a pre-trial defendant. In the pre-trial context, a defendant's liberty interest can implicate substantive as well as procedural rights, specifically, the proscription against punitive detention before trial. *But once a defendant is afforded the considerable process and constitutional protections of a jury trial and found guilty beyond a reasonable doubt, the substantive interest in avoiding punitive detention essentially disappears, and any continued expectation of liberty pending formal sentencing depends largely on statute.*

*United States v. Abuhamra*, 389 F.3d 309, 318-19 (2d Cir. 2004) (emphasis added) (quoting *Hamdi v. Rumseld*, 527 U.S. 507, 529 (2004), and internally citing *Jones v. United States*, 463 U.S. 354, 363 (1983)).

Moreover, under the Bail Reform Act, a defendant who does not pose a risk of flight or a danger to the community is entitled to bail pending appeal only if he or she shows that the appeal raises "a substantial question of law or fact" likely to result in reversal, an order for a new trial, a sentence that does not include imprisonment, or a reduced term of imprisonment "less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. §3143(b)(1). The "substantial question" showing requires that the appeal present a "close question or one that very well could be decided the other way"; it is not enough to show that a disputed point of law or fact was "fairly debatable" or that there is a "possibility of

- 18 -

reversal." *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985) (internal quotations omitted).

Bail pending appeal – which implicates a defendant's "most elemental" liberty interest – thus is available only in certain narrow, limited circumstances. Under the finality principle, by contrast, the *mere existence* of an appeal challenging a conviction mandates vacatur of that conviction and the resulting sentence if the defendant dies during its pendency, no matter how frivolous that appeal might be, and even if courts have already ruled that the appeal presented "no substantial question" of law or fact. This incongruity highlights the inherent fallacy of the finality principle.

Similarly, under the Sentencing Guidelines, a defendant's Criminal History Category ("CHC") is calculated based in large part on the computation of points for "prior sentence[s]," USSG §4A1.1, and the term "prior sentence" is defined as "any sentence previously imposed upon adjudication of guilty, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." USSG §4A1.2(1). Of particular relevance here, the Guidelines provide that "[p]rior sentences under appeal are counted except as expressly provided below," and that "[i]n the case of a prior sentence, the execution of which has been stayed pending appeal, §4A1.1(a), (b), (c), (d), and (e) shall apply as if the execution of such sentence had not been stayed." USSG §4A1.2(l). Only sentences that "have been

reversed or vacated because of errors of law" or "subsequently discovered evidence exonerating the defendant," or that "have been ruled constitutionally invalid in a prior case are not to be counted."  USSG §4A1.2, cmt. n.6.  This commentary is phrased entirely in the past tense – sentences that "have been" reversed or vacated or sentences that "have been" ruled constitutionally invalid – which necessarily is "'backward-looking'; it refers to things that have already happened, not those yet to come."  *Cawthorn v. Amalfi*, 35 F.4th 245, 258 (4th Cir. 2022).  Courts therefore have rejected claims that a prior sentence should not receive criminal history points because the underlying case was pending on appeal.[10]  And this includes situations where the "prior sentence" is a federal conviction being challenged on appeal.  *See United States v. Austin*, 276 F. App'x 376, 376-78 (10th Cir. 2008) (unpublished).

To be sure, the Supreme Court has said that a criminal defendant who successfully attacks a state sentence "may then apply for reopening of any federal sentence enhanced by the state sentence[]."  *Custis v. United States*, 511 U.S. 485, 497 (1994).  But unless and until that occurs, a defendant's CHC can properly include points for any "prior sentence," state or federal, that is being appealed.

---

[10] *See United States v. Williams*, 490 F. App'x 296, 296 (11th Cir. 2012) (unpublished per curiam); *United States v. Garduno-Trejo*, 395 F. App'x 321, 324 (8th Cir. 2010) (unpublished per curiam); *United States v. Brewer*, 191 F.3d 448, at *1 (4th Cir. 1999) (Mem.) (per curiam); *United States v. Howard*, 991 F.2d 195, 200 (5th Cir. 1993).

Under the finality principle, by contrast and once again, the *mere existence* of an appeal challenging a conviction mandates vacatur of that conviction and the resulting sentence if the defendant dies during its pendency. Here, too, this incongruity highlights the inherent fallacy of the finality principle.

Finally, when a defendant dies while his or her direct appeal is pending, this Court is not faced with the choice of deciding "between disregarding a finding of guilt and entering an unreviewed judgment." *Estate of Parsons*, 369 F.3d at 415. This Court instead could simply dismiss the appeal as moot because the defendant died while his or her direct appeal was pending, which would not constitute an affirmance or endorsement of an "unreviewed judgment." That is the approach this Court took in *Sampson*. *See* 26 F.4th at 516 ("The appeal of the death sentence is dismissed as moot. We decline to exercise our equitable discretion to vacate Sampson's death sentence. His convictions, life sentence, and death sentence are not vacated and remain intact.").

This Court alternatively could adopt an approach similar to that taken in *Hernandez*. In that case, the Supreme Judicial Court of Massachusetts ("SJC") concluded that it would no longer follow the abatement doctrine because "we have been unable to discern a reasoned analysis for the adoption of the abatement ab initio doctrine" and "we are presented with substantial evidence it should be changed[.]" 481 Mass. at 599, 118 N.E.2d at 121. The SJC instead adopted a rule that when a

- 21 -

defendant dies while his or her direct appeal is pending, the appeal is dismissed and the trial court instructed to note in the record that the defendant's conviction removed the presumption of innocence, that the conviction was appealed, and that the conviction was neither affirmed nor reversed because the defendant died while the appeal was pending. *Ibid.*[11] Under this approach as well, this Court would not be required to affirm or endorse an "unreviewed judgment."

For all these reasons, the finality principle does not support adoption of the abatement doctrine.

**b.** The punishment principle, which "focuses on the precept that the criminal justice system exists primarily to punish and cannot effectively punish one who has died," *Estate of Parsons*, 369 F.3d at 414, also does not support adoption of the abatement doctrine. To begin with, this principle is "short sighted" because "[i]t ignores consideration that the state has an interest in preserving a presumptively valid conviction." *Gleason*, 349 So.3d at 981; *accord State v. Carlin*, 249 P.3d 752, 764 (Alaska 2011) ("The interest of the victim and the community's interest in condemning the offender persists even after the defendant's death."). The Ninth Circuit has made the same point:

---

[11] Other state courts have adopted the same approach. *See Gleason*, 349 So.3d at 982-83; *Majors v. State*, 465 P.3d 223, 225 (Okla. Crim. App. 2020); *Wheat v. State*, 907 So.2d 461, 464 (Ala. 2005).

> [T]here is an important distinction between incarceration itself, and the significance for society of gaining a criminal conviction for a defendant's violation of the law. A conviction and resulting sentence serves more purposes than the incapacitation, specific deterrence, and rehabilitation of an individual; general deterrence of the serious crime at issue here is also an important consideration.

*United States v. Onuoha*, 820 F.3d 1049, 1056 (9th Cir. 2016).

Indeed, Congress has made clear that sentencing serves purposes that go beyond the mere punishment of a defendant when it enacted the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987. In that Act, Congress directed that district courts must consider a variety of factors at sentencing, including, *inter alia,* the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as the need for the sentence imposed "to afford adequate deterrence to criminal conduct[.]" 18 U.S.C. §3553(a)(2)(B), (a)(2)(C). Deterrence thus is one of "the four purposes of sentencing generally, and a court must fashion a sentence 'to achieve the[se] purposes * * * to the extent that they are applicable' in a given case." *Tapia v. United States*, 564 U.S. 319, 325 (2011).

Equally important, the Supreme Court has recognized that "in the administration of criminal justice, courts may not ignore the concerns of victims." *Morris v. Slappy*, 461 U.S. 1, 10 (1983). Congress also recognized that the victims of crimes have rights when it passed the Mandatory Victims Restitution Act of 1996

- 23 -

("MVRA"), Pub. L. No. 104-132, 110 Stat. 1238, and the Crime Victims' Rights Act of 2004 ("CVRA"), Pub. L. No. 108-405, 118 Stat. 2261.  In the CVRA, for example, Congress declared that victims of crimes have "[t]he right to proceedings free from unreasonable delay," as well as "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy."  18 U.S.C. §3771(a)(7), (8).  And in the MVRA, Congress declared that in certain categories of cases, "the court shall order, in addition to * * * any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate."  18 U.S.C. §3663A(a)(1).  Congress also declared in the MVRA that "in the event of the death of the person ordered to pay restitution, the individual's estate will be held responsible for any unpaid balance of the restitution amount."  18 U.S.C. §3613(b).  This provision was added by the Justice for All Reauthorization Act of 2016, Pub. L. No. 114-324, 130 Stat. 1948, and one of the purposes of that Act was to "strengthen crime victims' rights and programs by increasing access to restitution for federal crime victim."  162 Cong. Rec. H6326 (daily ed. Nov. 29, 2016) (statement of Rep. Goodlatte).

Similar provisions have been enacted at the state level, and "through State constitutions, statutes, and other avenues, the justice system acknowledges the rights and interests of the victims of crime."  *Hernandez*, 81 Mass. at 597, 118 N.E.3d at 120.  These provisions "have expanded the purpose of the criminal justice system

- 24 -

well beyond the cardinal principle of punishment." *Al Mutory*, 581 S.W.3d at 750 (internal quotation omitted).

Many state courts thus have abandoned the abatement doctrine upon concluding that it is inconsistent with the advent of these protections of victim's rights. *See, e.g., Gleason*, 349 So.3d at 982 ("The abatement *ab initio* doctrine is obsolete and inconsistent with our positive law.  To abate a conviction would be as to say there has been no crime and there is no victim."); *Payton v. State*, 266 So.3d 630, 640 (Miss. 2019) ("Because of the increased recognition of crime victims in both our Constitution and statutory law, we find that departure from the abatement ab initio doctrine is necessary to avoid the perpetuation of pernicious error."); *Al Mutory*, 581 S.W.3d at 749 ("As many courts in other states have recognized, these changes in the arena of victims' rights are incongruent with the doctrine of abatement ab initio because abating a defendant's conviction can have a detrimental impact on victims both emotionally and financially."); *State v. Korsen*, 141 Idaho 445, 450, 111 P.3d 130, 135 (2005) (holding that "there is a strong public policy ground for not abating a criminal conviction" because it would deny restitution to victims, and because "abatement of the conviction would deny the victim of the fairness, respect and dignity guaranteed by these laws by preventing the finality and closure they are designed to provide").

Indeed, the abatement doctrine causes real harm to the victims of crime and their loved ones.  The families of the victims in *Sampson*, for example, waited with patience and dignity for more than two decades to see that justice was done in that case, including attending two lengthy and emotionally wrenching penalty-phase trials.[12]  Sampson's convictions and sentences provided them with at least some measure of closure.  But when informed that Sampson's convictions or sentences might be vacated because he had died in prison while his direct appeal was pending, several family members submitted letters, which were docketed in the case, in which they expressed their confusion, anger, and incredulity about this development.  Mary Rizzo, for example, the mother of Jonathan Rizzo, a 19-year-old college student who was carjacked and brutally murdered by Sampson, poignantly described the anguish she felt after learning about this possibility:

---

[12] *See, e.g., United States v. Sampson*, 2017 WL 3495703, at *24 (D. Mass. Aug. 15, 2017) ("The testimony of the victims' family members was undeniably powerful, visibly moving many people in the courtroom."); *United States v. Sampson*, 58 F. Supp. 3d 233, 234 (D. Mass. 2014) (although granting seven-month continuance of second penalty-phase trial, "recogniz[ing] that a continuance will prolong the agony and uncertainty of the retrial for the families and friends who loved and lost the people Sampson murdered"); *United States v. Sampson*, 58 F. Supp. 3d 136, 138 (D. Mass. 2012) (noting that a second penalty-phase trial would be "anguishing for the families of Sampson's victims"); *United States v. Sampson*, 300 F. Supp. 2d 275, 278 (D. Mass. 2004) (in sentencing Sampson to death following first penalty-phase trial, stating: "You destroyed the lives of Philip McCloskey, Jonathan Rizzo, and Robert Whitney.  You deeply and irreparably damaged each of their families.  If anyone deserves the death penalty, you do.").

RECEIVED

JAN 1 4 2022

BY: U.S. COURT OF APPEALS

Mary Rizzo

To: The Judges of The First Circuit Court of Appeals,
Re: Case No. 17-6001- United States vs. Gary Sampson

This morning when I read the documents presented by you in reference to "Suggestion of Death" pertaining to Gary Sampson I was appalled. When will all this stop? Gary Sampson tortured and murdered three innocent people, one of them being my precious son, Jonathan Rizzo. Sampson's blatant and bragging confession of his detailed murder of Jonathan will forever haunt me. He pleaded guilty over and over, never once asking for forgiveness. He was an evil man. To think that his conviction might be wiped away is an insult to our family. For countless trials and appeals we stood with dignity and now it feels like you are taking away another piece of us.

Please stop this absurdity and let us honor our son.

Sincerely,

*Mary Rizzo*

Mary Rizzo
Jonathan's Mom

She is far from alone in feeling this way:

> Ruth Nichols, whose daughter, Lee Ann, was shot 10 times by [John] Salvi in one of two clinics he attacked in Brookline in 1994, Friday said she was "outraged" by the [abatement] ruling and angered that [defense counsel] would seek it.

> "That piece of paper wipes his slate clean," she said of [the abatement] order. "I have a piece of paper that tells me she had to have an autopsy after he pumped 10 bullets into her. They had to take her body apart. I can't wipe her autopsy clean. It's there. And so should his conviction be there."

John Ellement, *Salvi's Record Wiped Clean, Posthumously Charges Voided on Technicality*, THE BOSTON GLOBE, February 1, 1997, at A1.

This Court should decline to adopt a common law doctrine that serves only to revive the trauma and pain that crime victims and their loved ones have already suffered, and to shatter whatever faith they might have left in the justice system. As the Supreme Court of Tennessee aptly stated, "[w]e can no longer countenance a doctrine that causes so much harm to the living for the sake of the dead." *Al Mutory*, 581 S.W.3d at 750.

For all these reasons, the punishment principle also does not support adoption of the abatement doctrine.

**2.** The *amicus* is correct (*Amicus* Brief at 5-8) that all of the other regional federal courts of appeals have adopted the abatement doctrine in one form or another.[13] This Court also has said that "we do not lightly create a split among the circuits." *United States v. Zannino*, 761 F.2d 52, 56 (1st Cir. 1985). But this Court has done so when it concludes that the better view of the law runs counter to that

---

[13] *See United States v. Pogue*, 19 F.3d 663, 665-66 (D.C. Cir. 1994) (per curiam); *United States v. Mollica*, 849 F.2d 723, 725-26 (2d Cir.1988); *United States v. Christopher*, 273 F.3d 294, 297 (3d Cir. 2001); *United States v. Dudley*, 739 F.2d 175, 176-79 (4th Cir. 1984); *Estate of Parsons*, 369 F.3d at 413-18; *United States v. Toney*, 527 F.2d 716, 720 (6th Cir.1975); *Moehlenkamp*, 557 F.2d at 127-28; *United States v. Fairfield*, 526 F.2d 8, 9 (8th Cir. 1975); *United States v. Bechtel*, 547 F.2d 1379, 1380 (9th Cir. 1979) (per curiam); *United States v. Davis*, 953 F.2d 1482, 1486 (10th Cir. 1992); *United States v. Pauline*, 625 F.2d 684, 684-25 (11th Cir. 1980).

taken by its sister circuits.[14]  This is one of those situations for all the reasons just discussed.

Moreover, "[d]espite the common acknowledgment that abatement *ab initio* is a well-established and oft-followed principle in the federal courts, few courts have plainly articulated the rationale behind the doctrine."  *Estate of Parsons*, 367 F.3d at 413 (internal footnote omitted).  Indeed, several circuits appear to have adopted the abatement doctrine based on the mistaken view that *Durham* required it, or simply because other circuits had adopted it.[15]  *See Hernandez*, 481 Mass. at 593, 118 N.E.3d at 117 ("To date, the justification for adopting the doctrine was the simple fact that it was perceived to be the favored approach elsewhere.").  Many of these decisions also predated the enactment of the MVRA and the CVRA, and those courts

---

[14] *See, e.g., Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84, 97-100 (1st Cir.), *cert. denied*, 142 S. Ct. 2777 (2022); *United States v. Wurie*, 723 F.3d 1, 1-14 (1st Cir. 2013), *reh'g en banc denied*, 724 F.3d 250 (1st Cir. 2013), *aff'd by Riley v. California*, 573 U.S. 373 (2014); *Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan*, 705 F.3d 58, 67 (1st Cir. 2013); *Muniz v. Sabol*, 517 F.3d 29, 37-40 (1st Cir. 2008); *United States v. Nascimento*, 491 F.3d 25, 27, 38-39 (1st Cir. 2007); *In re Bank of New England Corp.*, 364 F.3d 355, 365-66 (1st Cir. 2004); *Rossiter v. Potter*, 357 F.3d 25, 27, 32 & n.5 (1st Cir. 2004); *United States v. Meyer*, 808 F.2d 912, 913, 915-21 (1st Cir. 1987); *Zannino*, 761 F.2d at 56-57.

[15] *See Pogue*, 19 F.3d at 665; *Mollica*, 847 F.2d at 725-26; *Christopher*, 273 F.3d at 297; *Dudley*, 739 F.2d at 176; *Toney*, 527 F.2d at 720; *Fairfield*, 526 F.2d at 9; *Bechtel*, 547 F.2d at 1380; *Davis*, 953 F.2d at 1486; *Pauline*, 625 F.2d at 684-85.

therefore had no occasion to consider the implications of those statutes with respect to the abatement doctrine.[16]

Finally, while the en banc Fifth Circuit did engage with the principles underpinning the abatement doctrine in *Estate of Parsons*, it ultimately concluded that "[p]resumptions of innocence and a desire to ensure guilt naturally point to extinguishing all criminal proceedings," and "[t]he primary justification for the abatement doctrine arguably is that it prevents a wrongly-accused defendant from standing convicted." 367 F.3d at 415. That analysis runs counter once again to what the Supreme Court made pellucid in *Herrera*: "Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." 506 U.S. at 399.

At bottom, the decisions of the state courts discussed above that have declined to adopt or have abandoned the abatement doctrine are much better reasoned and far more persuasive than the decisions by the federal courts of appeals that have adopted it. This Court should chart a different path from its sister circuits and decline to adopt the abatement doctrine.

---

[16] *See Mollica*, 847 F.2d at 725-26; *Dudley*, 739 F.2d at 176; *Toney*, 527 F.2d at 720; *Moehlenkamp*, 557 F.2d at 127-28; *Fairfield*, 526 F.2d at 9; *Bechtel*, 547 F.2d at 1380; *Pauline*, 625 F.2d at 684-85.

### III.  IF THIS COURT ADOPTS THE ABATEMENT DOCTRINE IN THIS CASE, REYNOLDS'S CONVICTION AND ANY ASSOCIATED FINANCIAL PENALTIES MUST BE VACATED.

The final question this Court directed the government and the *amicus* to address is, if the abatement doctrine were adopted, whether it should apply to either or both of (a) the convictions being challenged by defendant at the time of his death, and/or (b) the financial aspects of the judgment of conviction, such as forfeiture and restitution.   The answer, assuming this Court chooses to adopt the abatement doctrine, is that the abatement doctrine should apply to both.

*First*, if the Court chooses to adopt the abatement doctrine, the government agrees with the *amicus* (*Amicus* Brief at 12-14) that Reynolds's appeal should be dismissed, and the case remanded with instructions that the district court vacate the judgment of conviction and dismiss the indictment.  *See Libous*, 858 F.3d at 66; *Pogue*, 19 F.3d at 665-66.

*Second,* if Reynolds's conviction is vacated, the government also agrees with the *amicus* (*Amicus* Brief at 14-25) that the financial penalties imposed in this case must also be vacated.  In *Nelson v. Colorado*, 581 U.S. 128 (2017), the Supreme Court held that when a criminal conviction is invalidated by a reviewing court and no retrial will occur, the government is obliged to refund any fees, court costs, and restitution extracted from the defendant as a result of the conviction:

>    Nelson and Madden have an obvious interest in regaining the
> money they paid to Colorado.  Colorado urges, however, that the funds
> belong to the State because Nelson's and Madden's convictions were
> in place when the funds were taken.  But once those convictions were
> erased, the presumption of their innocence was restored.  "[A]xiomatic
> and elementary," the presumption of innocence "lies at the foundation
> of our criminal law."  Colorado may not retain funds taken from Nelson
> and Madden solely because of their now-invalidated convictions, for
> Colorado may not presume a person, adjudged guilty of no crime,
> nonetheless guilty enough for monetary exactions.

*Id.* at 135 (internal citations and footnotes omitted).  The Court also rejected the State

of Colorado's invitation to parse the reasons that a conviction may have been

reversed or vacated, holding that "reversal is reversal, regardless of the reason, and

an invalid conviction is no conviction at all."  *Id.* at 136 n.10 (internal quotation and

alteration omitted).

Hence, if the abatement doctrine were to be adopted and Reynolds's

conviction vacated, the financial aspects of the judgment of conviction – the special

assessment of $400, the restitution order of $7,551,757, and the forfeiture order of

$280,000 – must also be vacated.  Courts to have considered *Nelson* in applying the

abatement doctrine have so held.[17]

---

[17] *See, e.g., United States v. Ziglar*, — F. App'x —, 2021 WL 5072078, at *1
(4th Cir. Nov. 2, 2021) (unpublished per curiam); *United States v. Coddington*, 802
F. App'x 373, 375 (10th Cir. 2020) (unpublished); *United States v. Ajrawat*, 738 F.
App'x 136, 139 (4th Cir. 2018) (unpublished per curiam); *Brooks*, 872 F.3d at 89-
91; *Libous*, 858 F.3d at 66-69.

- 32 -

It cannot escape mention, however, that *Nelson* reaffirms what the Supreme Court made clear in *Herrera*, as the presumption of innocence necessarily cannot be "restored" unless it has already been taken away by virtue of a defendant's conviction. *See Nelson*, 581 U.S. at 135 ("But once those convictions were erased, the presumption of their innocence was restored.").

In addition, that the adoption of the abatement doctrine would invalidate the restitution order of $7,551,757 in this case – to say nothing of restitution orders in other cases going forward – only underscores why that doctrine is inconsistent with the MVRA and CVRA, statutes that Congress enacted to protect the victims of crime and hold offenders accountable for the losses they inflict. It also would contravene 18 U.S.C. §3613(b), in which Congress spoke directly and without exception to the question of what should happen when a defendant subject to a restitution order dies, providing that "[i]n the event of the death of the person ordered to pay restitution, the individual's estate will be held responsible for any unpaid balance of the restitution amount[.]" This Court should decline to adopt a common law doctrine that would so plainly thwart Congress's will in these circumstances. *Cf. United States v. Texas*, 507 U.S. 529, 534 (1993) (statute must "speak directly" to question addressed by the common law to abrogate a common-law principle). And while the Tenth Circuit rejected the government's reliance on section 3613(b) in its unpublished decision in *Coddington*, it did so based on circuit precedent, stating that

"the estate's responsibility under the statute presupposes a conviction, but under *Davis*, Mr. Coddington's convictions must be vacated." 802 F. App'x at 375 (citing *Davis*, 953 F.2d at 1486). This Court, by contrast, is not constrained by circuit precedent to adopt or apply the abatement doctrine, and therefore is free to decide whether adoption and application of that doctrine would conflict with section 3613(b).

These are yet additional reasons why this Court should decline to adopt the abatement doctrine. As the SJC put it succinctly, that doctrine is "outdated and no longer consonant with the circumstances of contemporary life, if, in fact, it ever was." *Hernandez* 481 Mass. at 583, 118 N.E.3d at 110.

## CONCLUSION

For these reasons, this Court should decline to adopt the abatement doctrine and instead simply dismiss Reynolds's appeal as moot.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:    */s/ Mark T. Quinlivan*
MARK T. QUINLIVAN
Assistant U.S. Attorney

- 34 -

## CERTIFICATE OF COMPLIANCE WITH
## Rule 32(a)

**Certificate of Compliance with Type-Volume Limitation
Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **8,165** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) (*i.e.*, the corporate disclosure statement, table of contents, table of citations, addendum, and certificates of counsel).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word version 2016.

                                        /s/ *Mark T. Quinlivan*
                                        MARK T. QUINLIVAN
                                        Dated:  March 1, 2023

- 35 -

## <u>CERTIFICATE OF SERVICE</u>

I, Mark T. Quinlivan, AUSA, certify that on March 1, 2023, I served a copy of the foregoing document on the following registered participant of the CM/ECF system: Judith H. Mizner, Esq., Federal Defender Office, District of Massachusetts, 51 Sleeper Street, 5th Floor, Boston, MA 02210.

*/s/ Mark T. Quinlivan*
MARK T. QUINLIVAN